# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:16-CR-00100-MOC-DSC

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| vs. | ) |
| | ) **ORDER** |
| SHANNA JEAN BRANDON, | ) |
| Defendant. | ) |

**THIS MATTER** comes before the Court on Defendant's most recent *pro se* Motions for Compassionate Release, brought pursuant to 18 U.S.C. § 3582(c)(1)(A). See Doc. Nos. 133–35, 138. In considering these motions, the Court has reviewed all of Defendant's compassionate release filings up to this point. See Doc. Nos. 115–16, 118–25, 127–29, 133–35, 138. For reasons discussed below, Defendant's motions for compassionate release are denied.

## I. BACKGROUND

On May 12, 2016, Defendant pleaded guilty to conspiring to distribute methamphetamine, a Schedule II controlled substance, violating 21 U.S.C. §§ 841(a)(1) and 846. Doc. Nos. 29, 34. The United States Probation Office prepared a presentence investigation report to assist the Court in sentencing. Doc. No. 44. The Court adopted the report in imposing its sentence. Doc. No. 85.

The report carefully documented the nature and the circumstances of the offenses leading to Defendant's guilty plea. Defendant was intimately involved with her co-defendant, Erick Yahir Rodriguez-Saloman. See Doc. No. 44 at 4. While he was arrested, and his deportation was pending, Defendant took over his drug methamphetamine trafficking business. Id. At some point, a confidential informant contacted law enforcement and turned over a large quantity of methamphetamine that Defendant had given them. See id. Thereafter, on March 7, 2016, Georgia

officers stopped Defendant while she was driving, finding her in possession of approximately 32 grams of methamphetamine, approximately $12,501, and a .40 caliber Smith & Wesson handgun. See id. After receiving a Miranda warning, Defendant admitted that she sold methamphetamine, which she obtained in large quantities—3 kilograms at one point and 10 kilograms at another. See id. at 5. According to her, she conducted between $30,000 and $60,000 worth of laundering transactions to send funds to her supplier. See id. She also admitted that the drugs and gun in her car belonged to her, and that she had the gun for protection while making drug runs. See id.

On March 16, 2016, officers executed a search warrant at Defendant's and Rodriguez-Saloman's residence, finding two small jars of liquid methamphetamine, two handgun holsters, and empty Taurus handgun box, a scale, and several financial documents. See id. Officers learned that their landlord had already started to evict them, had taken possession of a Keltec foldable rifle, and had thrown numerous grams of methamphetamine into a dumpster. See id. The day after the search, the landlord contacted the investigative team, reporting he found an additional 50 grams of methamphetamine in a bag in a kitchen cabinet behind pots, as well as a digital scale. See id.

Based on the nature of the offense and Defendant's criminal history, the Court found that Defendant's Total Offense Level was 32, Criminal History Category was III, and her Guidelines imprisonment range was 168 to 210 months. Doc. No. 85 at 1. The Court departed below the Guidelines, imposing a sentence of just 84 months. See Doc. No. 84 at 1. At this time, Defendant has about two years remaining on that sentence.

On April 16, 2020, Defendant first filed a compassionate release motion, seeking release based on the COVID-19 pandemic. See Doc. No. 116. Defendant filed several additional motions, which asserted that she suffers from several health conditions which might exacerbate COVID-19, including "breathing problems," and "irregular beating" heart, obesity, and dizziness. Doc. Nos.

2

115 at 2, 118 at 3, 121 at 3. She also asserted that she has been a "model inmate" while imprisoned. Doc. No. 115 at 2. On May 12, 2020, and on June 8, 2020, the Court denied all of Defendant's compassionate release motions because she failed to provide the Bureau of Prisons with the statutory thirty days to consider her compassionate release request. See Doc. No. 126.

Since that time, Defendant has satisfied the statutory exhaustion requirement. See Doc. No. 137-1 at 1. Defendant has also filed several additional *pro se* motions. See Doc. Nos. 133–35. In her latest motions, Defendant again asserts that COVID-19 provides "extraordinary and compelling reasons" for her release. First, she maintains that she suffers from several health conditions that could render COVID-19 a death sentence, including "a history of smoking . . ., a BMI of over 30 . . ., and untreated heart and breathing complications." Doc. No. 134 at 4. She next alleges that her place of incarceration "is not equipped to handle an influx of" COVID-19. Doc. No. 133 at 2. Specifically, "[t]here have been no attempts made to implement physical distancing, effective testing, screening, hygiene and disinfecting policies, or meaningfully modified movement protocols for staffs." Doc. No. 134 at 3; see also Doc. No. 135 at 3. She also notes she has served most of the time for her "low level drug offense." Doc. No. 133 at 1; see Doc. No. 134 at 6. Finally, Defendant asks the Court to consider compassionate release because her "death would be most devastating to her two young daughters, as she is the primary . . . and now only parent due to her children's father being deported." Id. at 5.

At the Court's request, the Government filed two responses, each arguing that Defendant should not receive compassionate release for two reasons. First, Defendant failed to offer "extraordinary and compelling reasons" warranting a reduction under 18 U.S.C. § 3582(c). Doc. No. 117 at 2–7, 15–17. Specifically, the Bureau has taken measures to mitigate the risk of COVID-19 transmission in Defendant's place of incarceration. See id. And Defendant's medical records

3

do not demonstrate "any proven comorbidity factors" as she asserts. Doc. No. 137 at 1.

Second, assuming these facts could present an "extraordinary and compelling reason" warranting a sentence reduction, the Government next asserts that Defendant poses a significant danger to the safety of the community and that the § 3553(a) factors militate against such compassionate release. See id. at 1. Contrary to her assertions of serving for a "low level drug offense," the Government points out that Defendant has about two years left to serve on a seven-year sentence for tracking more than five kilograms of methamphetamine. See Doc. No. 137 at 1. Thus, release now would create unwarranted sentencing disparities, would fail to serve the need for specific and general deterrence, and would fail to reflect the seriousness of the offense.

## II. ANALYSIS

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce a term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." As relevant here, the applicable policy statement provides that the Court "may reduce a term of imprisonment . . . if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable, the Court determines that" (1) "extraordinary and compelling reasons warrant the reduction," (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," and (3) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13; see United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).

Here, the Court has considered the state of the COVID-19 pandemic—both generally and within Defendant's place of imprisonment—Defendant's criminal history, his disciplinary record while imprisoned, and her age and medical conditions. On balance, the weight of this evidence and the § 3553(a) factors counsel against release at this time. As explained by the Government—

4

and as expressly adopted here—Defendant failed to present "extraordinary and compelling reasons" warranting a reduction. See Doc. No. 117 at 2–7 and 15–17, 137 at 1–2. And, even assuming Defendant did present such a reason, the danger that Defendant poses to the community and the § 3553(a) factors weigh against release. See Doc. No. 117, 137. Specifically, Defendant was involved in a large-scale drug trafficking conspiracy that also involved several firearms for "protection" during her drug runs. See Doc. No.44 at 5. Release now would create unwarranted sentencing disparities, would fail to serve the need for specific and general deterrence, and would fail to reflect the seriousness of the offense. The Court declines to order compassionate release.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's Motions for Compassionate Release, Doc. Nos. 133–35, 138, are **DENIED**.

Signed: July 22, 2020

Max O. Cogburn Jr
United States District Judge